IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT TATUM, and all similarly situated
DOC/CCI Inmates,

               Plaintiff,

  v.

MIKE MEISNER, JIM SCHWOCHERT, CATHY
JESS, JANE NICKELS, RICK PHILLIPS, MARK
TESLIK, CHAP. CAMPBELL, CHAP. DORN,
KELLI WEST, MALONEY, PROG. DIRECTOR
SCHUELLER, PROG. DIRECTOR IRIZAY, UNIT
MANAGER HAUTAMAKI, LT. MORRISSON,
LT. PEACHIE, CAPT. PEIRCE, SRGT. PAUL, SRGT.
BERLUND, JEFF CAPELLE, DR. SULIENE, DAI
DIETICIAN, DR. SCOTT HOFTIEZER, RN KAY
DEGNER, MARY LEISER, JOANNE LANE, JOANNE
BOVEE, RICK SCHNIEIER, CHARLES FACKTOR,
CHARLES COLE, EDWARD WALL, 5 UNKNOWN
OFFICERS, and 2 UNKNOWN NURSES,

               Defendants.

OPINION AND ORDER

13-cv-44-wmc

---

In this proposed civil class action, plaintiff Robert Tatum is seeking leave to proceed under the *in forma pauperis* statute, 28 U.S.C. 1915, on his claims that defendants violated his and other, similarly-situated inmates' constitutional rights in numerous ways. In particular, plaintiff challenges several policies of the Division of Adult Institution and/or Columbia Correctional Institution. Normally, the next step would be for the court to screen plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Unfortunately for plaintiff, his complaint violates Federal Rule of Civil Procedure 20 in that he alleges numerous claims against different defendants for unrelated conduct. Such varied claims cannot be brought in a single action. As explained in more detail below,

Tatum must choose which lawsuit he wishes to pursue as Case No. 13-cv-44. For the other proposed lawsuits, Tatum may (1) pursue those claims and defendants in separate lawsuits, or (2) choose to dismiss the other claims and defendants without prejudice to bringing them at another time provided the applicable statute of limitations has not expired. Once Tatum has made his selection, the court will then screen this action under 28 U.S.C. § 1915A.

Tatum has also filed a motion for temporary restraining order / preliminary injunction (dkt. #8), alleging that defendants' new photocopy policy obstructs his access to courts. The court will deny this motion at this time because Tatum has not complied with the court's procedures for seeking preliminary injunctions and because the facts do not warrant this relief.

ALLEGATIONS OF FACT[1]

**I. Parties**

Plaintiff Robert Tatum is currently incarcerated at the Columbia Correctional Institution ("CCI") and was previously incarcerated at some other unidentified maximum security facility for all times relevant to this complaint. Tatum seeks to represent a class consisting of inmates also incarcerated at CCI, Dodge Correctional Institution and (perhaps) other institutions.

---

[1] In addressing any pro se litigant's complaint, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this screening order, the court assumes the probative facts above based on the allegations in his complaint.

Defendant Edward Wall is the Secretary of the Department of Corrections ("DOC") for the State of Wisconsin.[2] Cathy Jess is the Administrator of the Division of Adult Institution ("DAI"), which is part of the DOC. Kelli West is the DAI head member of the religious request review committee. DAI Dietician is an unknown person responsible for the management and nutrition of inmates' meals, including religious diets. Faktor and Cole serve as Corrections Complaint Examiners ("CCE") under the direction of Hamblin.

Mike Meisner is the warden of CCI and serves as the Appropriate Reviewing Authority. Jane Nickels is the Security Director of CCI. Mark Teslik and Campbell are or were chaplains at CCI for the relevant period. Maloney is the CCI librarian. Schuler is a program director at CCI, responsible for the management of program services. Hautamaki, Morrison, Paul, Berguld and five unknown officers are all correctional officers at CCI. Dr. Suliene is a doctor at CCI. Tatum also asserts claims against two unknown nurses at CCI. Leiser and Lane are both Inmate Complaint Examiners ("ICE") at CCI.

Jim Schwochert is the warden of Dodge Correctional Institution ("DCI"). Rick Phillips is DCI's Security Director. Dorn is or was a chaplain at DCI. Irizay is a program director at DCI. Peachie and Pierce are correctional officers at DCI. Jeff Cappelle is the Food Service Administrator at DCI. Dr. Hoftiezer is a doctor and Degner is a nurse at

---

[2] The complaint names Gary Hamblin, the former Secretary, as a defendant. Because the allegations against Hamblin are in his official capacity, the court has replaced Hamblin with the current secretary.

DCI. Bovee is the ICE at DCI. Schneiter is that Appropriate Reviewing Authority at DCI.

All defendants are alleged to act under color of state law and are being sued in both their individual and official capacities.

II. Nature of Complaints

    A. Religious Diet

Tatum alleges that on about June 27, 2011, DCI Chaplain Dorn placed Tatum on a vegan diet, which did not meet his religious diet requirement and left him malnourished. Tatum further alleges that he was placed on a vegan diet pursuant to a DAI's "Religious Affiliation Umbrella Group" policy, which is allegedly promulgated by defendant Jess. Tatum alleges that this policy "classified related religions into a group, and forces inmates to accept the exact same services designated to that group regardless of whether the services meet your particular religion's requirements." (Compl. (dkt. #1) ¶ 29.) Tatum complained to Dorn and DCI Warden Schwochert that the diet did not meet his religious dietary restrictions or provide the minimum intake standards as required under DOC-309.23.[3]

---

[3] When defendants failed to respond, Tatum alleges that he started a fast / hunger strike. As to this, Tatum alleges various related claims specific to his individual treatment. At some point, Tatum allegedly decided to eat one meal per day and requested an accommodation from defendant Phillips to allow him to eat that one meal in his cell so that he could store and manage meals. Tatum claims defendants' denied his request "based on spite and not a pertinent security issue/reason." (*Id.* at ¶ 31.) Tatum also alleges that defendant Peirce and Peachie removed a sign he had placed outside of his cell tallying the number of days he was on fast to stop him from communicating his fast / strike to other inmates. Tatum further alleges that Peirce and Peachie called him to the

4

On August 8, 2011, Tatum was transferred to CCI, at which time he filed a new religious preference and religious diet form that was denied by defendant Irizay as "outside of practice currently required by DCI." The denial was affirmed by West and Meisner and the subsequently-filed grievance was also rejected. Subsequent requests were similarly denied.

Tatum participated in the Ramadan fast at DCI / CCI during the 2011 fast. As established by DAI (defendant Jess in particular), Ramadan meals consist of two bags provided at approximately 4:00 a.m. and at sundown. The food in the two bags is supposed to be comparable to the three meals of the general diet in terms of nutrition intake. Tatum alleges that the two bags combined do not equal the nutrition of the three daily, general diet meals and, more importantly, do not meet the minimum intake standards established in the DOC Diet Manual. Tatum alleges that he exhausted administrative remedies on this issue as well.[4] Because of the inadequate nutrition, Tatum further alleges that his religious practice was substantially burdened and he suffered health consequences, including "suffered atypical damages" because of his unique diet and health and body type. (*Id.* at ¶ 60.)

---

security office and threatened him in an attempt to persuade him to stop his fast / strike, causing him emotional distress. Finally, Tatum alleges that he suffered health problems related to the denial of religious diet and lack of proper nutrition and that defendant Hoftiezer and Degner ignored his medical needs.

[4] Tatum also alleges that he was later denied Ramadan meals in 2012 because of his 2011 grievance over the lack of nutrition in those meals.

### B. Grievance Process

Tatum also alleges that CCI Warden Meisner "affirms any decision of the ICEs without reviewing the merits of their actions / determinations or the inmates' grievance, and is in effect a 'rubber stamp' for affirming any actions against inmates regardless of [whether] that action was valid or violated an inmate's substantial rights." (*Id.* at ¶ 64.) Tatum cites to examples from his own administrative challenges to the religious diet policy. As such, Tatum alleges that defendants cause Tatum and "his class to suffer loss of time and monetary expense in seeking court interve[n]tion that are more properly venued with the ICRS [to] resolve." (*Id.* at ¶ 69.)

### C. CD/DVD Ban

Tatum separately challenges DAI/CCI policy instituted by Jess and Meisner of banning inmates' possession of CDs/DVDs for legal purposes. Tatum specifically alleges that on July 20, 2012, two CD/DVDs containing evidence in another of Tatum's *pro se* lawsuits were confiscated during a unit wide shakedown search. Tatum further maintains that the content of these discs were copied off the chapel library computer, allowing any inmate or officer to view the contents. Tatum alleges that this policy violates his Sixth and First Amendment rights and that defendants lack a "legitimate penological interest in the CD/DVD ban for legal use." (*Id.* at ¶ 80.)

### D. Laptop Ban

Tatum also challenges defendants Jess's and Meisner's policy banning possession of laptop computer and email / internet access in CCI, contending that defendants have "no substantial penological interest" in this ban.

### E. Tort Claim based on Release Account Policy

Defendants Jess, Hamblin and Meisner are separately alleged to have a policy denying inmates use of their release accounts, regardless of an inmates' sentence and eligibility for release. Tatum alleges that "release accounts are trust accounts, in which a percentage of an inmates' total received money is set aside up to $5000 to ensure the inmate has funds for basic expenditures such as transport & clothes upon release from incarceration." (*Id.* at ¶ 86.)  Tatum alleges, therefore, that he and other inmates with life sentences with no parole eligibility should be able to access their release accounts "because the purpose of the trust account cannot be achieved" in these cases. (*Id.* at ¶ 100.)  In Tatum's view, that this policy is "basically a robbing on inmates' money without legitimate purpose" and seeks release of the funds through a state law conversion or replevin action.

### F. Phone Access Policy

Tatum separately challenges Meisner's policy denying him and other inmates pursuing cases *pro se* from "making phone calls to further their legal pursuits, calling courts for case updates & information, conferring with opposing counsel, witnesses, or

7

other necessary parties during business hours, by not allowing inmates phone use during business hours or access to direct-line phone services." (*Id.* at ¶ 102.) Once again, Tatum challenges the justification for this policy and further contends that the policy limits his and other inmates' effectiveness at pursuing *pro se* lawsuits.

### G. Library Access

Tatum also challenges Meisner and Maloney's policy limiting access to the library to 10 inmates per unit on assigned dates and times, which forces inmates to choose between recreation and library participation. Tatum similarly challenges a new policy that removed all legal books from the library and only allows caselaw and statute searches via LEXIS computer access allowed during law library time. As a result, Tatum contends that defendants have prevented Tatum and others from pursuing their legal claims, and that the policy serves no legitimate penological interest.

### H. Treatment of Legal Materials during Search

Plaintiff also complains of having some of his legal papers thrown away during a lockdown property search. Plaintiff contends that defendants Morrison and Paul discarded legal materials after Tatum alerted them of the content of some of his papers. Tatum further alleges that this evidence was necessary for him to pursue his active *pro se* cases.

I. **Mail Use Policy**

Tatum similarly alleges that on March 19, 2012, Tatum turned a brief over to the prison mail personnel with three valid postage stamps, containing sufficient pre-paid postage for the brief. On March 23, 2012, the package was returned with "void" written on the stamps with an ink pen, destroying the stamps' value and preventing the filing of Tatum's brief. Tatum further alleges that the stamps were destroyed pursuant to Meisner's policy. Plaintiff alleges that a similar incident occurred on May, 2, 2012, and that he was disciplined for his use of the stamps. Tatum further alleges that this incident was in retaliation for Tatum's filing of grievances for rights violations and his active court cases against prison personnel.

J. **Photocopy Policy**

Finally, plaintiff alleges that CCI Warden Meisner instituted a new photocopy policy on January 1, 2013, which requires inmates to send material through inter-institution mail to the Education Department for scanning and approval outside of the inmate's presence. Previously, inmates copied materials during their scheduled library period with the library correctional officer reviewing and approving materials in the inmate's presence. Tatum contends that the new policy threatens disclosure of confidential legal documents and introduces the risk that the legal papers will be lost. In turn, Tatum contends that the new policy obstructs inmates' access to courts.

OPINION

## I. Federal Rule of Civil Procedure 20

The Court of Appeals for the Seventh Circuit has emphasized that district courts have an independent duty to apply the permissive joinder rule in Fed. R. Civ. P. 20 to prevent improperly joined parties or claims from proceeding in a single case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that complaint raising unrelated issues against different defendants "should be rejected" by district court in accordance with Rule 20). Rule 20(a) prohibits a plaintiff from asserting unrelated claims against different defendants in the same lawsuit, unless (1) the plaintiff asserts at least one claim against each defendant arising out of the same transaction or series of transactions; *and* (2) the action presents a question of law or fact common to all of the defendants. Fed. R. Civ. P. 20(a); *George*, 507 F.3d at 607. If both requirements of Rule 20(a) are satisfied, then a plaintiff may join as many additional, unrelated claims as he has against those defendants. Fed. R. Civ. P. 18(a); *Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983). A plaintiff may not, however, use Rule 18(a) to join claims against additional defendants outside the "core group" identified in Rule 20(a).

In this case, Tatum asserts separate claims against different defendants for different occurrences or series of occurrences. The court understands Tatum to be bringing the following claims, which even generously divide into at least four separate lawsuits:

- **Lawsuit #1 (Denial of Adequate Religious Diet as violation of First Amendment and RLUIPA and Retaliation Because of Complaints about Religious Diet)**

- o Defendants' religious diet policy fails to account for an individual's specific religious requirements.

- o Defendants' religious diet policy fails to provide adequate nutrition, in particular for those inmates observing Ramadan.

- o Defendants Peirce and Peachie retaliated against him because of his complaints about the inadequacy of the religious diet, including Tatum's fast / food strike.

- **Lawsuit #2 (Denial of Medical Treatment Related to Inadequate Diet in Violation of the Eighth Amendment)**

    - o Defendants Hoftiezer and Degner ignored his medical needs related to the denial of religious diet and lack of proper nutrition.

- **Lawsuit #3 (Meisner's Treatment of Grievances in Violation of Fourteenth Amendment)**

    - o Defendant Meisner's automatic affirmance of any action against inmates violates inmates' Fourteenth Amendment rights.

- **Lawsuit #4 (Access to Courts Claim Challenging Various Prison Access Policies)**

    - o Defendants Jess, Meisner and Maloney implemented various policies that limit inmates' ability to represent themselves in *pro se* cases, including (1) CD/DVD ban, (2) laptop ban, (3) phone access policy, (4) library access, (5) treatment of legal materials during a search), (6) mail use policy, and (7) photocopy policy.

- **Lawsuit #5 (Tort Claim based on Release Account Policy)**

    - o Defendants' policy of not allowing inmates serving life sentences without the possibility of parole from using the funds in their release accounts constitutes conversion.

Because these five, distinct claims involve separate transactions against a different core set of defendants, they may not be brought in a single lawsuit. Under *George*, the court may apply the filing fee that Tatum owes in this case to any of the five lawsuits listed above, but Tatum will have to choose which of the lawsuits to pursue as Case No.

11

13-cv-44.[5]

For the other lawsuits, Tatum must make a choice. He may choose to pursue them separately. In that case, he will be required to file separate complaints as to each and pay a separate filing fee for each, understanding that Tatum will be subject to a separate strike for each lawsuit ultimately dismissed as legally meritless.[6] Alternatively, Tatum may choose to dismiss the other lawsuits voluntarily. If he chooses this latter route, he will not owe any additional filing fees or face any potential strikes. Any lawsuit dismissed voluntarily would be dismissed without prejudice, so Tatum may be able to bring it at another time provided the applicable statute of limitation has not expired.

In short, because Tatum faces a filing fee and possible strike for each additional lawsuit pursued, he should carefully consider the merits and relative importance of each potential lawsuit before proceeding. Because it is unclear which lawsuit Tatum wants to pursue, he should also be aware that the court has not assessed the possible merits of any of the separate lawsuits identified above. Once Tatum identifies the suit he wants to pursue under this case number, the court will screen the actions that remain as required under 28 U.S.C. § 1915(e)(2).

---

[5] Arguably, plaintiff's medical claims in Lawsuit #2 above arise out of the actions challenged in Lawsuit #1, even though the legal standards are different, meaning plaintiff might combine those two suits, but Lawsuits ##3, 4, and 5 have *no* arguably common transaction or question of law or fact. For this reason, plaintiff's motion for class certification and appointment of class counsel (dkt. #7) is also premature. The court is not in a position to evaluate plaintiff's motion until Tatum selects which of his several proposed claims is going forward. Accordingly, the court will deny this motion without prejudice to refiling at the appropriate time.

[6] Once a prisoner receives three strikes, he is not able to proceed in new lawsuits without first paying the full filing fee (except in narrow circumstances). 28 U.S.C. § 1915(g).

**II. Preliminary Injunction**

Tatum has also filed a motion for preliminary injunction/ temporary restraining order.  (Dkt. #8.)   In the motion, Tatum complains that the new photocopy policy described above "violates pl[aintiff's] ([and] his class['] access to courts rights and impedes pl[aintiff] from completely pursuing his active pro se cases by its enforcement." (*Id.* at 1.)  Specifically, Tatum contends that the policy is preventing him from obtaining copies to file motions in a separate *pro se* case because his inter-institutional mail containing legal materials is being "tampered with, 'lost' without a trace, and [that he has] received other inmates' mail on FREQUENT basis."  (*Id.*)   Tatum also complains that other inmates have had similar issues.

Although there are many reasons to deny this motion, two will suffice at this juncture.  *First*, Tatum's motion fails to comply with this court's procedures for obtaining a preliminary injunction, a copy of which will be provided to Tatum with this order. Under these procedures, a plaintiff must file and serve individual, proposed findings of fact that support his claims, along with underlying *evidence* that support each proposed finding of fact.  Although Tatum has declared under oath alleged impacts of the new policy, he has submitted *no* proposed findings of fact or evidence to which the defendants would be required to respond.

*Second*, even if Tatum's motions were not facially flawed, the court would deny the motion on its merits at this time.  Granting preliminary injunctive relief "is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 389 (7th Cir. 1984).  A district court

must consider four factors in deciding whether a preliminary injunction should be granted: (1) whether the plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant; and (4) whether the granting of a preliminary injunction will disserve the public interest. *Pelfresne v. Vill. of Williams Bay*, 865 F.2d 877, 882-83 (7th Cir. 1989).

Based on his submission to date, Tatum is not likely to demonstrate that defendants' new photocopy policy obstructs his access to court in violation of the First Amendment. Indeed, a review of the docket in *Tatum v. Clarke*, No. 11-cv-1131 (E.D. Wis. Dec. 31, 2011), demonstrates that Tatum is fully participating in this lawsuit. *See Eichwedel v. Chandler*, 696 F.3d 660, 673 (7th Cir. 2012) ("[A]n inmate may prevail on a right-of-access claim only if the official actions at issue hindered his efforts to pursue a legal claim." (internal citation and quotation marks omitted)). To the extent Tatum experienced difficulty in submitting summary judgment papers in that lawsuit because of defendants' photocopy policy, he could have sought relief in the Eastern District of Wisconsin. Moreover, Tatum's numerous court filings in that case bellies any claim that he has been irreparably injured by defendants' new photocopy policy. *See* E.D. Wis. CM/ECF Docket for *Tatum*.

At this time, Tatum should respond to the pleading deficiencies identified in this order, so that the court can apply the appropriate law to screen his claims. Should he wish to pursue any motion for Temporary Restraining Order or Preliminary Injunction in

14

the meantime, he must refile it in accordance with this opinion. Plaintiff is not, however, entitled to discovery (1) unless separately allowed by order of the court *or* (2) until after this court screens his complaint, the complaint is served on defendants *and* the court holds its preliminary pretrial conference. Fed. R. Civ. P. 26(b).

ORDER

IT IS ORDERED that:

1) Plaintiff Robert Tatum's motion for temporary restraining order / preliminary injunction (dkt. #8) is DENIED without prejudice;

2) Plaintiff's motion for class certification and appointment of class counsel (dkt. #7) is DENIED without prejudice;

3) No later than October 21, 2013, Tatum must identify for the court which one of the lawsuits identified in this opinion, he wishes to pursue under the case number assigned to his complaint;

4) No later than October 21, 2013, Tatum must also inform the court whether he wishes to continue to prosecute any of his other claims as separate lawsuits or withdraw them voluntarily. If Tatum dismisses these claims voluntarily, he will owe no further filing fee. If Tatum advises the court he intends to prosecute one or more of these claims in a separate lawsuit, he will (1) owe a separate $350 filing fee for each new lawsuit and (2) need to file a separate complaint setting forth his claims; and

5) If plaintiff fails to respond to this order by October 28, 2013, then the clerk is directed to enter an order dismissing without prejudice the entire lawsuit based on plaintiff's failure to prosecute it.

Entered this 30th day of September, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge