IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT TATUM, and all similarly situated
DOC/CCI Inmates,

                              Plaintiff,                            OPINION AND ORDER

     v.

                                                 13-cv-44-wmc

MIKE MEISNER, and CATHY JESS,

                         Defendants.

Plaintiff Robert L. Tatum, an inmate currently incarcerated at the Wisconsin Secure Program Facility and previously incarcerated at Columbia Correctional Institution, now seeks: (1) my recusal from this case because delays in screening and ultimate dismissal of many of his putative claims and defendants; (2) review of this court's order granting his third motion for reconsideration, which allows him to proceed only against defendants Michael Meisner and Cathy Jess on claims under the First Amendment Free Exercise clause and RLUIPA's substantial burden provision, 42 U.S.C. § 2000cc-2(b); and (3) certification of a class action and appointment of class counsel. (Dkt. ##27, 28.) For the reasons set forth below, the court will deny all motions, while providing Tatum additional guidance on the process for certifying this case as a class action and appointing class counsel.

OPINION

## I.  Motion for Recusal

Tatum filed this action on January 18, 2013 (dkt. #1), with motions following in early February for class certification (dkt. #7) and preliminary injunction/TRO (dkt. #8). At the end of September, 2013, the court denied those motions (dkt. #11), as well as a separate motion for recruitment of counsel (dkt. #10), and directed him to advise which of as many as 5 possible causes of action he wished to pursue in this lawsuit.  After denying repeated motions for reconsideration and entering judgment dismissing the lawsuit without prejudice for failure to narrow his claims in December of 2013 (dkt. #16), the court reopened the case in September of 2014 in response to a third, post-judgment motion to reconsider that directed the court to a cover letter accompanying one of his earlier motions for reconsideration, in which Tatum stated, 'I am willing to drop claims vs. the Warden of DCI, Jim Schwochert, but I still contend the Complaint is valid as it is.  All the other issues were asserted against 1 defendant in compliance with FRCP Rule 18, CCI's Warden Mike Meisner."   (Dkt. #22 (quoting (2nd Mot. for Reconsideration, Letter (dkt. #14-1)).)  At the same time,  the court granted Tatum leave to proceed with claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(b), against the warden of the Columbia Correctional Institution (Michael Meisner) and the DOC Administrator for the Division of Adult Institutions (Cathy Jess) concerning the nutritional adequacy of Ramadan meals.  (Dkt. #22.)

Among other things in response, Tatum has now filed a motion to disqualify or recuse the undersigned.  Two statutes exist for disqualifying a federal judge in a particular case.  *See* 28 U.S.C. §§ 144 and 455.  Section 144 requires a federal judge to recuse himself for "personal bias or prejudice."  Section 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and section 455(b)(1) provides that a judge shall disqualify himself if he "has a personal bias or prejudice concerning a party."  Because the phrase "personal bias or prejudice" found in § 144 mirrors the language of § 455(b), they may be considered together.  *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000).

Section 144 provides that when a party makes and files a timely and sufficient affidavit alleging that the judge has a personal bias or prejudice either against him or in favor of the adverse party, the judge should proceed no further and another judge should be assigned to the proceeding.  To be sufficient, the affidavit is to "state the facts and the reasons for the belief that bias or prejudice exists," which must support an assertion of actual bias.  *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985).  They must be definite as to times, places, persons and circumstances.  *Id*.  Only those facts that are "sufficiently definite and particular to convince a reasonable person that bias exists" need be credited.  *United States v. Boyd*, 208 F.3d 638, 647 (7th Cir. 2000).  "Simple conclusions, opinion or rumors are insufficient."  *Id*.

Similarly, in deciding whether a judge must disqualify himself under 28 U.S.C. § 455(b)(1), the question is whether a reasonable person would be convinced the judge was

biased. *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996) (internal quotation omitted). Recusal "is required only if actual bias or prejudice is proved by compelling evidence." *Id*.

Tatum has neither filed an affidavit stating the facts and reasons for his belief that bias or prejudice exists, nor otherwise demonstrated that disqualification or recusal is required. Accordingly, Tatum has not complied with the requirements of § 144.

Even ignoring the lack of an affidavit, Tatum merely takes issue with the timing and the content of the court's screening order in this case, which limited Tatum's claims to the ones set forth above under the First Amendment and the RLUIPA. The record reflects that a substantial part of the delay in this case is attributable to Tatum, who repeatedly refused to comply with court orders to file an amended complaint in compliance with federal pleading rules. Tatum does not show that the remaining portions of delay in this case are attributable to reasons other than this court's heavy workload. Perhaps Tatum could take some comfort from the fact that this court has one of the highest weighted caseloads *per judgeship* and had been down one of its two judgeships for six years until very recently. Perhaps not.

Regardless, I can assure him that the delay in taking up his *third* motion to reconsider had nothing to do with any bias or prejudice, but rather was a product of oversight. Nor was Tatum's filing a judicial complaint about that delay ill-received. On the contrary, it called the court's attention to this long-pending motion. In any event, there is neither bias or prejudice, nor the appearance of bias in the court agreeing to reopen this case despite Tatum burying his election to narrow his suit in a cover letter to the court.

To the extent that Tatum takes issue with the screening order itself, he fails to show that the order was incorrect.  Moreover, judicial rulings do not constitute proof of bias.  *Liteky v. United States*, 510 U.S. 540, 555 (1994). Because Tatum has failed to present any, much less compelling, evidence of bias or prejudice, his motion for the court's disqualification will be denied.

## II. Motion for Reconsideration

The court previously laid out the procedural posture of this case in its September 16, 2014, opinion and order, granting Tatum leave to proceed on two claims both relating to defendants' alleged denial of a nutritionally adequate diet during Ramadan. (9/16/14 Opinion & Order (dkt. #22).)  Plaintiff challenges that order on several bases, all of which the court rejects.

*First*, Tatum argues that the court misinterpreted his prior filings and failed to consider his complaint in light of his request to proceed "against all related defendants of the claims I joined against Meisner under Rule 18." (4th Mot. for Reconsideration (dkt. #28) 1.)  As explained in the court's September 16 order, the court considered all claims against Meisner and only granted Tatum leave to proceed on First Amendment and RLUIPA claims concerning the nutritional adequacy of Ramadan meals.  With respect to that claim, the court joined defendant Cathy Jess, who allegedly promulgated the policy at issue.  Since the court did not grant Tatum leave to proceed on any other claim against Meisner, there are no other claims to which other defendants could be joined.

*Second*, Tatum complains that the court erred in not allowing him to proceed on an "access-to-courts" claim against Meisner and related defendants based on their approach to the grievance policy.  The court denied Tatum leave because such a claim requires plaintiff to plead an actual injury.  *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) ("[T]o satisfactorily state a claim for an infringement of the right of access, prisoners must also allege an actual injury."); *see also Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (explaining that an access-to-courts claim "spell out . . . [a] connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions").  Tatum contends that he did plead injury because interfering with the exhaustion process constitutes injury for purposes of stating an access-to-courts claim.  (4th Mot. for Reconsideration (dkt. #28) 1.)

In support of this argument, plaintiff cites to *Davis v. Milwaukee County*, 225 F. Supp. 2d 967 (E.D. Wis. 2002).  In that case, however, defendants impeded plaintiff's ability to exhaust by blocking access to the grievance process.  *Id*. at 976-77.  Here, Tatum alleged that Meisner acted as a "rubber stamp," "affirm[ing] any decision of the ICEs without reviewing the merits of their actions/determinations or the inmates' grievance[s]." (Compl. (dkt. #1) ¶ 64.)  While Tatum may not have received the relief he requested through the grievance process, he does not allege that *Meisner* blocked his efforts to engage in the grievance process.  As such, the court finds no basis to reconsider its conclusion at the screening stage that Tatum failed to allege an injury necessary to state an access-to-courts claim against Meisner.  If he can do so in good faith, Tatum may seek leave to amend his complaint, filing a proposed amended complaint containing such

allegations of injury.  Tatum, however, should be mindful that such a claim may not be conducive as a purported class action.

*Third*, Tatum argues that the court erred in failing to consider his allegations concerning legal CD/DVD and phone access policies as claims arising under the Sixth Amendment right to self-counsel.  (4th Mot. for Reconsideration (dkt. #28) p.2.)  As an initial matter, Tatum's allegations with respect to the legal CD/DVD ban do *not* reference the Sixth Amendment; rather, the complaint simply references an "access to the courts violation." (Compl. (dkt. #1) p.6.)  The case referenced in the legal CD/DVD section of the complaint also appears to be either a civil action or a collateral attack on his criminal conviction, neither of which implicates the Sixth Amendment.  *See Rauter v. United States*, 871 F.2d 693 (7th Cir. 1989).

With respect to the CCI's phone policy, the complaint does *reference* the "right to self-counsel." (Compl. (dkt. #1) p.8.)  Plaintiff's injury, however, is not that his Sixth Amendment rights were violated:  there is no claim that he was denied counsel or denied the opportunity to represent himself by the state court.  Rather, his complaint is that Meisner, through the phone policy, impeded his ability to access the courts.  For that claim, plaintiff must plead an injury, which again he has failed to do.  Accordingly, the court did not err in denying Tatum leave to proceed on a Sixth Amendment claim or an access-to-courts claim concerning the legal CD/DVD and phone access policies.

*Fourth*, Tatum argues that the court erred in considering his technology ban claim as an access-to-courts claim, rather than an Eighth Amendment deliberate indifference claim.  In his motion for reconsideration, Tatum contends that this claim presents a

"novel, critical rights issue . . . that failure to allow inmates access to necessary technology to prepare them for integration into/allow connection to a technological society violates the 8th Amendment by denying effective rehabilitation." (4th Mot. for Reconsideration (dkt. #28) p.2.) While this legal theory is certainly novel, it is also frivolous. The Eight Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The denial of access to laptops and other forms of technology does not even arguably approach this level.

Even if this claim had some legal merit, Tatum would lack standing to bring such a claim given that he is serving a term of imprisonment of life without the opportunity for parole and, therefore, he is in no way injured by Meisner's failure to prepare him for integration back into a technologically-advanced society. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (requiring injury to have constitutional standing to bring a claim).

*Fifth*, Tatum contends that the court erred in failing to consider whether he stated a claim under the Due Process Clause of the Fourteenth Amendment with respect to his allegations about Meisner's treatment of release accounts. Specifically, Tatum argues that he and other inmates with life sentences with no parole eligibility should be able to access their release accounts "because the purpose of the trust account cannot be achieved" in these cases. (Compl. (dkt. #1) ¶ 100.). The Seventh Circuit has closed the door, however, on any substantive due process claim based on a prisoner's confiscation of personal property, including money. *See Secret v. Brierton*, 584 F.2d 823, 830 (7th Cir.

1978) ("There is no constitutional right that prohibits prison officials from confiscating most of a prisoner's personal property pending release from prison. The constitutional violation arises only if they confiscate that property without due process of law.")

To the extent Tatum seeks to assert a procedural due process claim -- and Tatum does not allege that he was denied certain procedural protections, like notice and an opportunity to be heard -- this court, as well as the Wisconsin Court of Appeals, has rejected similar claims. *See Sahagian v. Dickey*, 646 F. Supp. 1502, 1508-09 (W.D. Wis. 1986) (rejecting substantive and procedural due process claims premised on requirement that inmate deposit 15% from every incoming check into a release account); *Richards v. Cullen*, 150 Wis. 2d 935, 941-43, 442 N.W.2d 574, 576-77 (Ct. App. 1989) (rejecting due process and equal protection claims where plaintiff serving life sentence challenged "gate money" requirement).

Relatedly, Tatum also contends that Meisner's release account policy constitutes an *ex post facto* violation because the new policy requires an account balance of $5000, instead of $500 under the old policy.  (4th Mot. for Reconsideration (dkt. #28) p.2.) Tatum fails to lay out a coherent theory of how the release account policy increases his punishment, but even if he had, Tatum cannot demonstrate as a matter of law that the "new policy improperly dimish[es] rights" given the Seventh Circuit's finding that a prisoner does not have a substantive due process right in his personal property.  (*Id.*)  *See also Secret*, 584 F.2d at 830.

*Sixth*, Tatum takes issue with the court's denial of leave to proceed on an access to courts claim premised on Meisner's and related defendants' "intentionally destroy[ing]

all of the legal books in the law library as a way to hinder / obstruct inmate lawsuits / court access."   (4th Mot. for Reconsideration (dkt. #28) p.2.)   As explained above, Tatum must plead an actual injury in pursuing an access-to-courts claim, which he has failed to do.  *See, e.g., In re Maxy*, 674 F.3d at 660; *Marshall*, 445 F.3d at 968.   Tatum represents that he could provide exampled where he was denied "the necessary information to file a sufficient complaint by their destruction of all of the law books." (4th Mot. for Reconsideration (dkt. #28) p.2.)  If he can do so in good faith and with specificity, Tatum may seek leave to amend his complaint, filing a proposed amended complaint containing such allegations of injury.

*Seventh*, Tatum next complains that the court misconstrued his "property claim/lockdown policy" as an access-to-courts claim, instead of a Fourteenth Amendment Due Process claim.  (4th Mot. for Reconsideration (dkt. #28) p.3.)   In reviewing the allegations under the "lockdown policy/suspension of inmate rights" section of the complaint, the only allegation involving Meisner concerned an August 20, 2012, facility-wide lockdown and the searches associated with that lockdown.  (Compl. (dkt. #1) ¶ 119.)   However, a prisoner has no "reasonable expectation of privacy" in his living quarters.  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).   Thus, there are no due process protections at stake here.

While Tatum also alleges that other individuals seized legal items, this too would not state a due process claim, but rather could make out an access-to-courts claim, provided, of course, that Tatum alleged an injury associated with such a seizure.  *See, e.g., Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) (citing *Hudson* and finding no privacy

interest involved in search of cell, including legal materials); *Edwards v. Faust*, No. 09-3264, 2010 WL 4386852, at *1-2, 407 F.App'x 948, 949-50 (7th Cir. Nov. 4, 2010) (affirming district court's construing of seizure of legal documents as an access-to-courts claim, requiring allegation of injury).

*Eighth*, Tatum takes issue with the court's treatment of his mail use policy claim, arguing that the court misconstrued this claim as an access-to-courts claim, rather than a First Amendment claim. (4th Mot. for Reconsideration (dkt. #28) p.3.) In brief, Tatum alleges that certain stamps were destroyed pursuant to Meisner's policy. Plaintiff has not explained why he has a speech interest in the use of *specific* stamps. To the extent Tatum has a First Amendment interest in the outgoing mail that he sought to send, plaintiff has not alleged that he was barred from sending the mail at issue in this case, but rather that Meisner has a policy on the type of stamp used.[1] As such, the court concludes that plaintiff has failed to state a claim under the First Amendment.

Ultimately, I can assure Tatum that there was no deliberate act on the part of the court to miss claims or frame them in a way unintended by Tatum. Rather, by casting his net so wide and failing repeatedly to respond to this court's order requiring him to narrow his claims as required under the Federal Rules of Civil Procedure, plaintiff himself created a convoluted record, which the court itself was forced to unravel. Having been granted leave to proceed on claims against Meisner, and having received a second review on several claims for which Tatum was denied leave, the court *strongly* encourages Tatum

---

[1] As best as the court can surmise, it appears the policy may bar use of improperly obtained stamps.

to move this case forward, focusing on his First Amendment and RLUIPA claim premised on denial of a nutritionally-adequate Ramadan meal.[2]

## III.  Renewed Motion for Class Certification and Appointment of Class Counsel

Tatum also renews his motion for class certification under Rule 23 and seeks appointment of class counsel.  As previously explained, to certify a class pursuant to Federal Rule of Civil Procedure 23, a plaintiff must prove (1) that the case satisfies the four requirements of Rule 23(a) -- numerosity, commonality, typicality and adequacy -- and (2) that the class can be maintained under one of the subsections of 23(b).  Except for a passing reference to there being at least 800 inmates at CCI and thousands in the Wisconsin Department of Correction, plaintiff neither makes an argument nor offers any evidence demonstrating that these requirements are met.  While the court notes that plaintiff cannot demonstrate adequacy without the appointment of class counsel, the court will not recruit counsel solely because Tatum seeks to bring a class action.  Instead, plaintiff will be required to make a threshold showing that his claims are suitable for class treatment.

To that end, in seeking class certification, plaintiff will be required to submit a motion with accompanying materials demonstrating:

- **Numerosity**. To satisfy the first requirement, plaintiff must demonstrate that the class is so "numerous that joinder of all parties is impracticable." Fed. R.

---

[2] In this regard, rather than bringing further motions to reconsider past rulings that Tatum no doubt believes were erroneous, he will be better served by saving them for appeal and instead concentrate on those claims this court has allowed to proceed.

Civ. P. 23(a)(1). "The rule of thumb adopted in most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:5 (8th ed. 2011) (collecting cases); *see also Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) ("The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." (citing *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969))). In demonstrating numerosity, plaintiff must focus on the number of inmates at CCI impacted by the Ramadan-meal policy, and not the number of total inmates at CCI.

- **Commonality.** Rule 23 also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement "does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). Plaintiff should identify the common question or questions of law or fact which could be presented as a class action.

- **Typicality.** Plaintiff must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is satisfied if the class representative's

13

claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (internal citation omitted).

- **Adequacy with respect to class representative.** Rule 23(a) requires that both the class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). At the initial stage, Tatum need only demonstrate that *he* would be an adequate class representative. This "adequacy" requirement is not onerous and generally is satisfied if the representative plaintiff does not have interests antagonistic to those of the other class members. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). In addressing this requirement, Tatum should specifically address (1) whether he can serve as the representative of a class of CCI inmates now that he is incarcerated at WSPF; and (2) whether his sentence to life without parole may make his interests different form other, if not most, members of the class.

## ORDER

IT IS ORDERED that:

1) plaintiff Robert Tatum's motion to disqualify (dkt. #27) is DENIED;

2) plaintiff's motion for reconsideration of the court's September 16, 2014, opinion and order (dkt. #28) is DENIED; and

14

3)  plaintiff's renewed motion for class certification and appointment of class counsel (dkt. #28) is DENIED without prejudice.

Entered this 18th day of November, 2014.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge