IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT TATUM, and all similarly situated
DOC/CCI Inmates,

                    Plaintiff,                  OPINION AND ORDER

   v.

                                                        13-cv-44-wmc

MICHAEL MEISNER and CATHY JESS,

                    Defendants.

---

This case is set for a bench trial commencing June 22, 2016, on plaintiff Robert Tatum's claim that defendants Michael Meisner and Cathy Jess denied his request for a Nation of Islam diet in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(b). In advance of trial, the court issues the following opinion and order on a number of pending motions.[1]

**I. Motion for Reconsideration**

Plaintiff Tatum filed a motion for reconsideration on the court's summary judgment motion on four grounds. (Dkt. #79.) *First*, Tatum contends that the court erred in failing to consider his two-page "motion for partial summary judgment," one of which contained his seven proposed findings of fact. (Dkt. #50.) In response, defendants filed a motion to strike on the basis that the motion did not comply with this court's rules on summary judgment filings. (Dkt. #53.) To make matters worse, Tatum's only evidence in support of his so-called motion was the complaint and a single

---

[1] The court will take up Tatum's filings requesting subpoenas for witnesses and writs of habeas corpus ad testificandum for inmate witnesses during the final pretrial conference scheduled for June 10, 2016.

response to admission, to which defendants also objected. Instead of addressing these two motions -- the only outcome of which would be to strike plaintiff's motion for summary judgment -- the court instead opted to take up defendants' motion for summary judgment, which complied with this court's procedures and for which plaintiff filed a robust opposition. Ultimately, the court found disputed issues of fact in deciding defendants' motion, which foreclosed entry of partial judgment in plaintiff's favor as well, mooting both that motion and defendants' motion to strike.

*Second*, and related to the first basis, Tatum argues that the court committed error in failing to consider his request for judgment independent of his own incomplete and defective motion under Federal Rule of Civil Procedure 56(f)(1), pointing out that this request was part of his opposition brief to defendant's motion for summary judgment. While the court did not acknowledge this request in its opinion and order, there is no claim or an element of a claim for which the court could have entered judgment in Tatum's favor for reasons aptly described above and in the court's summary judgment opinion itself.

*Third*, Tatum contends that the court erred in entering judgment in defendants' favor on his First Amendment claim, arguing that the court both improperly weighed the evidence and failed to conduct a full-blown *Turner* analysis. As for the court's treatment of the record, plaintiff is, of course, correct that the court's role is not to weigh the evidence on summary judgment, nor was this done here; rather, the court considered whether a reasonable trier of fact could find that Tatum met his burden of demonstrating that the denial of an NOI diet is not reasonably related to a legitimate penological

interest based on the undisputed facts viewed in a light most favorable to him. The court finds no basis for reconsidering that decision for all of the reasons provided in its summary judgment opinion. (1/26/16 Op. & Order (dkt. #75) 24-25.) Moreover, as the court explained in that opinion and Tatum wholly fails to address in his motion for reconsideration, defendants would be entitled to qualified immunity even if the court's analysis on the merits were somehow flawed. (*Id.* at 25-26.)

*Fourth*, and finally, Tatum argues that the court erred in finding that damages are not available under RLUIPA. In particular, Tatum takes issue with the court's failure to consider his argument that the treatment of Wis. Stat. § 895.46 in *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085 (7th Cir. 1990), provided an exception in Wisconsin to RLUIPA's general bar to damages. Section 895.46, which requires municipalities to indemnify its employees, is of no help to Tatum. In *Graham*, the Seventh Circuit resolved the conflict between that statute and Wisconsin's municipal tort immunity statute, Wis. Stat. § 893.80, holding that "the immunity statute does not absolve the villages and the police commission from indemnifying Mueller's estate." *Id.* at 1089. In other words, the court held that the government defendants could not claim immunity to guard against damages awarded against an individual defendant on the basis that the state would ultimately be on the hook to pay the damages under Wisconsin's indemnification provision. Critically, in that case, damages were available as a remedy under the federal statute at issue, 42 U.S.C. § 1983.

Here, Tatum pursues claims under a federal statute for which there is *no* right to damages. As the court explained in its summary judgment opinion and order, the

Seventh Circuit held in *Nelson v. Miller,* 570 F.3d 868, 886-89 (7th Cir. 2009), that damages were not available under RLUIPA. The Supreme Court reached the same conclusion in *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011), holding that RLUIPA's "appropriate relief" language does not constitute waiver of sovereign immunity for private damages claims. While Tatum notes Justice Sotomayor's *dissent* in *Sossamon*, in which she, joined by Justice Breyer, argue that waiver should apply and damages should be available under RLUIPA, that is plainly not the current state of the law. On the contrary, the majority's decision barring private claims to damages is.

*If* RLUIPA provided a right to damages, then the state could not claim immunity because Wisconsin's indemnification provision would require it to pay the damages consistent with *Graham*. Relief under RLUIPA, however, is limited to equitable remedies, and therefore *Graham* has no import here. Accordingly, the court finds no error in its determination that Tatum is limited to equitable relief under the RLUIPA claim. For all of these reasons, the court will deny Tatum's motion for reconsideration.


## II. Expert Witness Appointment

The court previously reserved on plaintiff's motion for appointment of counsel (dkt. #56) and invited defendants to respond to the motion and to the court's suggestion during the February 10, 2016, telephonic conference of appointment of a neutral expert.[2] After reviewing defendants' submission, the court agrees with defendants that an expert is unlikely to assist the court in understanding the evidence in this case. In any event,

---

[2] During the February 10 telephonic conference, Tatum acknowledged that appointment of a neutral expert would address his concerns.

4

the court has already explained that if during the course of trial expert testimony would appear to be important, the court could hold open the trial record and appoint a neutral expert.

## III. Confiscation of Legal Documents

Tatum filed a letter with the court complaining that certain legal documents were confiscated during a cell search on December 4, 2015. (Pl's 1/15/16 Letter (dkt. #73).) During the last telephonic conference, the court ordered defendants to provide a copy of the surveillance tape of his cell for the relevant period, which defendants promptly did. The court also ordered defendants to allow Tatum to review the video. Instead of allowing Tatum to view the video, defendants filed a motion to file the videotape under seal. (Dkt. #82.) For his part, Tatum filed a motion for contempt and sanctions. (Dkt. #87.)

In support of defendants' motion, the Security Director at WSPF Mark Kartman submitted a declaration explaining that disclosure of the video to Tatum would compromise WSPF's security. Specifically, Kartman avers that the video would inform inmates "on areas of the cell that are not focused on by staff, or any vulnerabilities in the cell search process," as well as reveal any "blind spots of the cell surve[i]llance cameras." (Kartman Decl. (dkt. #83) ¶¶ 7-8.)

Upon review, the court credits defendants' argument that release of the video could compromise the effectiveness of their search efforts going forward and, therefore, undermine security efforts. Accordingly, the court will grant defendants' motion to seal

5

the video. Moreover, in light of these reasonable security concerns, the court will deny Tatum's motion for a finding of contempt and sanctions based on defendants' failure to produce the video as originally required by the court.

In any event, the court has reviewed the video, which purports to be a recording from December 4, 2015 of Tatum's cell and is a little over one hour in length. During the course of the video, Tatum is removed from the cell, the cell is searched, and then Tatum is returned to the cell. Over the course of the search, there would appear to be four officers involved in varying degrees. The officers sifted through papers, in addition to other personal items. A tray outside of the cell appears to contain items being removed from the cell, which appear to be the same tray and items photographed in the conduct report attached to Kartman's declaration. In that report, an officer represents he confiscated "pieces of paper, puzzles . . . he had taped on his camera, vents and wall, tape off of his walls, folders that were falling apart and had tape on them, extra soap, food from meals, a stack of extra state envelopes (he already had 25 envelopes in his cell), and two juice cartons." (Kartman Decl., Ex. A (dkt. #83-1) p.3.) The photos appear consistent with this representation.

While Tatum complains about missing case notes, it appears that his main complaint is "the mixing and mutilating my entire legal property, making it un-usable and substantially affecting my ability to prosecute any of my cases." (Pl's 1/15/16 Letter (dkt. #73).) In conducting the search, the officers moved and restacked his legal papers, but there is nothing on the video supporting his claim that they removed legal documents from his cell (or if removed, did not return them), much less conducted the search for the

6

purpose of upsetting his organizational system.  Indeed, after completing the search, the officers took extra time to stack his papers into neat piles along the wall.  While the court understands Tatum's frustration with the disorganization caused by the search, unfortunately that frustration is part of the day-to-day challenges of being incarcerated.

Lastly, when pressed at his deposition for a description of the specific documents removed, Tatum noted declarations submitted by defendants in support of their motion for summary judgment.  (Tatum Depo. (dkt. #100) 8.)  To the extent Tatum no longer has these materials, the court or opposing counsel could provide copies.  Tatum did not, however, describe any evidence confiscated that he needs to pursue his claim at trial later this month.  While the court will deny Tatum any relief from the search itself, Tatum is free to address any ongoing concerns with access to legal documents at this week's final pretrial conference and during the court trial itself.[3]

## IV. Motion to Strike Deposition Testimony

Finally, Tatum seeks an order striking his deposition testimony based on his belief that defendants' counsel "allowed [Waupun Correctional Institution] to obstruct the deposition in this fashion so she could use the 'hard to hear' excuse as a way to later falsify my responses." (Pl.'s Mot. (dkt. #108) 1.)  Plaintiff explains that the deposition took place over an intercom system, and while defendants' counsel initially pressed for

---

[3] In addition to these motions, Tatum filed two motions seeking an order requiring defendant to unblock access to this court's electronic docket.  (Dkt. ##86, 98.)  While this court continues to work with the DOC on electronic filing efforts, the court is not in a position to order direct electronic access of a docket by an inmate.  As evidenced by the record in this case, however, the clerk's office has *repeatedly* responded to Tatum's requests for the docket sheet and will continue to do so as trial approaches.  (*See, e.g.*, dkt. #78.)  Tatum's request for electronic access to the docket is, therefore, denied.

Tatum to be allowed into the room, eventually she acquiesced to WCI's demand that Tatum remain in a separate room. Apparently, Tatum now believes that this was an elaborate charade by defendants' counsel who had intended to use the intercom system all along. This makes little sense. Regardless, Tatum contends that after review of the deposition testimony, "[t]he entire transcript is a mass of inaccuracies, jumbling my speech making statements partial, incoherent, inaccurate, for every answer provided." (*Id.* at 2.)

  The court has reviewed the transcript, and while there are quite a few "(inaudible)" notations in the transcript, the vast majority of Tatum's testimony appears to be recorded accurately. Moreover, Tatum fails to direct the court to any specific passages that are inaccurate. If anything Tatum's deposition testimony reflects the court's experience with his speaking style during telephonic hearings -- responding very quickly and, at times, moving from topic to topic in a sporadic fashion. While the deposition transcript may be difficult to follow at times -- and certainly the "inaudible" notations add to this -- it appears consistent with Tatum's overall speaking style.

  Regardless, defendants are the one prejudiced by an incomplete and unreliable transcript. To the extent that the transcript is uncertain due to inaudible sections, for example, defendants will not be able to rely on those portions to impeach Tatum. In the event that defendants sought to enter part of his deposition testimony into the record as a statement of a party opponent, or more likely for the purpose of assisting Tatum to recall his prior testimony or to impeach based on any inconsistencies with his trial testimony, the apparent deficiencies in the transcript will undermine its force.

8

Regardless, the court will not strike the deposition testimony as a whole, or otherwise grant a blanket limit on defendant's ability to refer to it at trial on a blanket basis, but rather will take it up on an individual basis as offered at trial.

## ORDER

IT IS ORDERED that:

1) plaintiff Robert Tatum's motion for appointment of expert (dkt. #56) is DENIED without prejudice;

2) plaintiff's request for relief (dkt. #73) is DENIED;

3) plaintiff's motion for reconsideration (dkt. #79) is DENIED;

4) defendants Michael Meisner and Cathy Jess's motion to seal Exhibit 115 (dkt. #82) is GRANTED;

5) plaintiff's motions for electronic filing access (dkt. ##86, 98) are DENIED;

6) plaintiff's motion for contempt or alternatively for sanctions (dkt. #87) is DENIED;

7) plaintiff's request for hearing (dkt. #96) is DENIED AS MOOT; and

8) plaintiff's motion to strike entire deposition of R. Tatum (dkt. #108) is DENIED.

Entered this 7th day of June, 2016.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge