IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT TATUM, and all similarly situated
DOC/CCI Inmates,

                        Plaintiff,                                    ORDER

        v.
                                                                     13-cv-44-wmc

MICHAEL MEISNER and CATHY JESS,

                        Defendants.

---

In an opinion and order dated June 14, 2018, the court advised plaintiff Robert Tatum that no further, post-judgment relief would be provided in this lawsuit, and directed him to either appeal the court's rulings and/or to file a new lawsuit with respect to unrelated matters. (Dkt. #177.) Despite this direction, the court has since received approximately a dozen submissions from plaintiff, concerning various grievances with defendants. Having previously entered a permanent injunction in this case requiring defendants to provide a Nation of Islam compliant diet, the court will nevertheless address those filings that concern Tatum's complaints of defendants' failures to comply with that injunction. As for plaintiff's other complaints regarding defendants' interference with his legal filings purportedly in retaliation for his filing of this or other lawsuits, his extensive submissions belies such an allegation. Regardless, because those allegations fall outside of the scope of this lawsuit, plaintiff will be directed to file a new lawsuit as to any interference with his mail, including legal filings.

As described in the court's June 14 order, plaintiff originally brought suit to challenge defendants' failure to provide him with an NOI-compliant diet as ordered in this

court.  Defendants responded, acknowledging some missteps due to turnover of the Food Service Administrator at Green Bay Correctional Institution and the printing format of the menus for Tatum's NOI diet, which failed to provide for some essential information (e.g., that the bread provided to Tatum should be whole wheat).  (Defs.' Resp. (dkt. #196) 3 (citing Brooks Decl. (dkt. #197)).)  As ordered by the court, defendants also provided several weeks of menus for Tatum's meals and explained the process by which either one or two staff members review each meal, as well as initial and date the menu to show compliance.  (Brooks Decl. (dkt. #197) ¶ 6; *id.*, Ex. 1 (dkt. #197-1).)  Defendants' explanation for Tatum's complaints of incorrect items appears reasonable.  Moreover, there is nothing to suggest that any missteps were intentional; rather, the incorrect items were a result of human error, which appear to have been corrected.  The court sees no reason to sanction defendants as to those errors.

Tatum also complains that correctional officers delivering his meals must be tampering with the items because he is not receiving all of the items listed on the menus. Specifically, Tatum complained that on August 28, 2018, he was missing "tuna, corn, ½ navy beans and ½ fruit."  (Pl.'s Mot. to Suppl. (dkt. #206-1) 1.)  Tatum similarly complains about correctional officers' apparent disdain for the injunction, claiming that one stated "Nobody give a fuck about your court orders."  (Pl.'s Mot. (dkt. #186) ¶ 6.) Moreover, Tatum submitted an affidavit of an inmate housed next to him, stating that he repeatedly has heard staff harass Tatum, telling him that they would take away his privileges.  (Berndt Decl. (dkt. #202).)

While defendants have offered the declaration of the Food Service Administrator to explain errors with respect to the preparation of Tatum's meals, they have not offered any counter to Tatum's complaints about correctional officers' tampering with his food trays or expressing disdain for the legal obligation to do so. As such, the court will require defendants to develop a procedure to ensure that the food that is prepared in the kitchen is actually received by Tatum, whether by requiring a member of the kitchen staff to deliver the tray, by ensuring that correctional staff be education on the reasons why Congress saw fit to pass RLUIPA and Tatum's right to invoke it, or by some other means.

Tatum also complains about two items on the menu that are worth consideration. *First*, he claims that the nutritional supplement drink he is now receiving does not have the halal compliant symbol. In their submission, defendants acknowledged this error, but stated it had been corrected. (Brooks Decl. (dkt. #197) ¶ 10.) To the extent Tatum is not receiving a halal-compliant product, the court will clarify that the injunction requires defendants to provide Tatum with Boost or another nutritional supplement drink that is so certified. *Second*, Tatum complains about the lack of fresh fruit, pointing out that the menus only provide for it one time per week. In the court's review, defendants' trial exhibits 503a and 503b, consisting of weekly menus, which formed the bases for the court's entry of a permanent injunction, provide fresh fruit on an almost daily basis. As such, the court will require defendants to modify the menus to provide fresh fruit at least five times per week. If defendants believe they should now be relieved of this obligation, they must bring a motion and supporting affidavit from a nutritionist explaining why. Unless and

3

until relieved by further court order, however, defendants will need to meet this requirement.

Finally, in his most recent submission, Tatum raises two additional issues. (Dkt. #211.) The first concerns two food samples that he apparently attempted to send to the court but were not received. This warrants no consideration. Whether the prison refused to send food to the court or the court's security intercepted such a package, it was neither reasonable nor necessary for Tatum to attempt such a delivery. Second, Tatum notes that he was recently transferred to the general population and describes concerns with how he is receiving his meal. Because it is understandable that GBCI may still be adjusting to Tatum's transfer to the general population, the court will simply remind defendants of their obligation to "allow Tatum to eat a portion of his daily meal in the dining hall if he is housed in the general population, with the other portion to be delivered to Tatum in his cell within one hour of his meal in the dining hall." (9/26/17 Op. & Order (dkt. #155) 15.) If Tatum continues to experience concerns with his receipt of food while housed in the general population, he should express his concerns in writing to the Food Service Administrator David Brooks, and Brooks should respond in writing to Tatum. Only then may Tatum raise concerns with the court, providing a copy of both at that time.

ORDER

IT IS ORDERED that:

1) Plaintiff's request for relief (dkt. #186) and motion to supplement (dkt. #206) are GRANTED IN PART AND DENIED IN PART as described above.

2) Plaintiff's motions for sanctions (dkt. ##195, 205) are DENIED.

3) Plaintiff's filing alerting court of DOC obstruction of evidence sent to this court, preventing its use, and disobeying dkt. #155 order related to receiving meals and portions in cell (dkt. #211) is DENIED.

4) To the extent any of plaintiff's other filings should be deemed as motions, they are DENIED.

5) On or before November 15, 2018, defendants are to submit a procedure for ensuring that the trays of food prepared in the kitchen for Tatum are actually received by him.

6) The court clarifies the permanent injunction (dkt. #169) as follows:

   a) Any nutritional supplement drink, e.g., Boost®, must contain the halal-compliant symbol.

   b) Tatum's NOI-diet must consist of at least five servings of fresh fruit per week.

Entered this 15th day of October, 2018.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge