IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT TATUM, and all similarly situated
DOC/CCI Inmates,

                      Plaintiff,                    ORDER

    v.                                           13-cv-44-wmc

MICHAEL MEISNER and CATHY JESS,

                      Defendants.

In a prior order intending to better define the extent of plaintiff Robert Tatum's rights under Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(b), the court (1) denied a series of motions for sanctions, (2) directed defendants to submit a procedure for ensuring that the trays of food prepared in the kitchen for Tatum are actually received by him, and (3) clarified the scope of the previously entered permanent injunction in two respects. (10/15/18 Order (dkt. #212).) Defendants appeared to have complied with the terms of their injunction, filing a response detailing their continued efforts to assuage Tatum's concerns about tampering and explaining the difficulties in enacting further protections. (Dkt. ##215-218.) Despite the court's direction to Tatum that no further, post-judgment relief would be provided in this lawsuit, however, Tatum continues to flood the court with new filings. (6/14/18 Order (dkt. #177).)[1]

---

[1] The court also encouraged Tatum to file an appeal if he believed the terms of the court's permanent injunction did not go far enough, which Tatum did. However, his appeal was dismissed due to Tatum's failure to pay the required docketing fee. (11/6/18 Order (dkt. #214).)

In this order, the court will address: (1) the defendant's response to the court's prior order directing them to develop a process to ensure delivery of food; (2) Tatum's ongoing concerns about lack of compliance with the permanent injunction; and (3) Tatum's request for further modification of the injunction. However, the court will not further address Tatum's ongoing concerns about e-filing of his submissions and a request for a criminal investigation. First, Tatum's numerous submissions belie any concern about prison staff failing to e-file his submissions. Second, Tatum has already been instructed repeatedly that these concerns must be pursued in a *new* lawsuit.

I. **Process for Delivery / Tampering Concerns**

In their response to the court's October 15th order, defendants acknowledge that some mistakes have been made in providing Tatum a "very unique diet," but once brought to the attention of the kitchen staff, the mistakes have been corrected. Defendants also point out that: none of Tatum's allegations about intentional food tampering have been confirmed; they have attempted repeatedly to assuage Tatum's concerns on this front; this has been a constant rallying cry for Tatum, even preceding his time at Green Bay Correctional Institution; and "no matter what the Court or GBCI does, Tatum will continue to complain about some aspect of the diet." (Defs.' Resp. (dkt. #215) 3.) Given the lengthy record in this six year old case, the court agrees that (1) a number of Tatum's concerns are based on honest mistakes rather than intentional interference, and (2) Tatum's extensive inmate complaint record, which predates entry of the permanent injunction in this case *and* his time at GBCI, support defendant's characterization.

2

Putting those general observations aside, and turning to defendant's response to the court's prior order, defendants describe GBCI's attempts to explore other options for food delivery. As an initial matter, GBCI considered whether kitchen staff could personally deliver Tatum's food, but given staffing limitations and the physical layout of the institution, understandably concluded that solution is not feasible. (In his submissions, even Tatum acknowledges the practical limitations of this option.) At some point, GBCI also considered taping his food bags shut, but all fastening devices are prohibited from Tatum's housing unit due to frequent abuse by inmates. Regardless, based on its submissions, the court is satisfied that GBCI is attempting in good faith to deliver Tatum his NOI-compliant diet, and it will not require defendants to take further steps at this time, other than to encourage GBCI staff to consider whether tape could be removed by Tatum from his food bag and handed to the officer at the time of delivery of the meal bag.

In their submissions, defendants also argue that if Tatum has ongoing concern about not receiving his food, he should be required to comply with the inmate complaint system. While the court would probably prefer this mechanism (and Tatum is free to use the inmate complaint process), the entry of a permanent injunction obviously makes his circumstances unique. If Tatum has credible concerns about defendants' failure to exercise good faith in complying with the injunction, then Tatum will continue to be allowed to raise those concerns with this court provided he does not abuse this right.

**II. Lack of Compliance with Court-Ordered Diet**

In its October 15th order, the court also clarified its permanent injunction in two respects: (1) any nutritional supplement drink (e.g., Boost®) must contain the halal-compliant symbol; and (2) Tatum's NOI-diet must consist of at least five servings of fresh fruit per week. (10/15/18 Order (dkt. #212).) Tatum complains that defendants have not complied with either requirement. (Dkt. #213 (letter complaining about lack of compliance with Boost); dkt. #229 (mot. for sanctions, complaining about receipt of canned fruit); dkt. #230 (more complaining about canned fruit).) First, with respect to Boost, as defendants explain in a subsequent submission, there was some initial confusion about the requirement, particularly in light of Tatum's prior acceptance of Boost Plus. (Dkt. #224.) After realizing that Boost Plus was not Halal-compliant, defendants switched Tatum to Boost Glucose Control, which is compliant. Since it appears that Tatum's initial concern has been rectified, a slight delay in compliance is understandable, especially in light of Tatum's prior, long-standing acceptance of Boost Plus, and it certainly is *not* grounds for sanctions.

As for the fresh fruit requirement, Tatum complains that he has been receiving canned fruit. From his submissions, however, it is unclear if Tatum is not receiving the five servings of fresh fruit required by the court's October 15, 2018, order, *or* if defendants are simply providing canned fruit as well. Absent an allegation that he is not receiving fresh fruit, there is no violation of the injunction, and the court requires no further action from defendants.

Finally, in a recent submission, Tatum represents that as of April 26, 2019, he is being served canned, rather than "fresh, cooked from raw navy beans." (Dkt. #232.) Reluctantly, the court will require defendant to respond to this allegation, as set forth below.

### III. Requests for Further Modification

Tatum next seeks further modification of the court-ordered NOI diet. Specifically, he requests: (1) filtered and distilled water; (2) cereal; and (3) butter. Tatum first sought these modifications through the administrative process, but was denied. In his follow-up request for filtered and distilled water, he responded:

> The court just ruled that the 28-day menu wasn't NOI compliant + ordered changes, so what's on the menu isn't important, it's compliance with my religious diet that is -- I just told you the water is part of tenets stated in NOI diet texts + is available, are you intentionally denying my request? If so, I will inform the courts etc. so they're aware you blatantly disregard Fed. Law + its order + our constitutional rights . . .

(Donovan Decl., Ex. 6 (dkt. #217-2).) Tatum's attempt to exploit the court's prior order to obtain additional food or drink items not required by the permanent injunction is *not* okay. Defendants are required to provide Tatum with an NOI-compliant diet as set forth in the court's permanent injunction. Defendants are not required to provide additional items which Tatum *now* contends are part of his religious diet. Before, during and after the trial, Tatum was provided ample opportunities to set forth his religious dietary requirements, and he *never* represented that filtered and distilled water was part of that requirement. In the future, such blatant attempts by Tatum to unreasonably try to leverage the original, permanent injunction may result in sanctions.

That said, Tatum remains free to pursue this request and his request for butter[2] and additional variation in cereals -- none of which are required under the court-ordered NOI-diet -- through the proper administrative process, which it appears he has attempted to do. Tatum attaches to one of his submissions a letter by Chaplain Mike Donovan, dated February 12, 2019, in which Chaplain wrote:

> I received your request asking for three modification to your religious diet. Following consultation with legal counsel, we have been informed that the court order requires a very specific diet and contains no language that would allow the diet to be modified. Because you are under [a] permanent injunction, the recourse to modify the diet would be to move the court to modify it or lift the injunction.

(Dkt. #228-1.)

The court disagrees with this response as follows: if Tatum requests a modification that *adds* items to the court-ordered diet, defendants are free to consider his request, and to grant or deny it accordingly. Regardless, on this record, the court will not require defendants to modify the injunction to add additional items.

ORDER

IT IS ORDERED that:

1) Any request for relief requested in plaintiff's letter informing the court of non-compliance (dkt. #213) is DENIED.

2) Plaintiff's request for investigation into federal crime e-filed obstruction (dkt. #219) is DENIED.

---

[2] From a letter attached to one of Tatum's submissions, it appears that Tatum does have access to butter and stockpiled a supply in his cell. (Dkt. #229-1 (describing incident report, listing numerous food items confiscated from his cell, including 12 butter packets and 50 margarine packets).)

3) Plaintiff's motion to modify the NOI diet (dkt. #228) and plaintiff's motion to supplement that motion (dkt. #233) are both DENIED.

4) Plaintiff's motions for contempt (dkt. #229) and motion to supplement that motion (dkt. #230) are both DENIED.

5) Defendants are directed to file a response to plaintiff's motion for contempt concerning canned navy beans (dkt. #232) on or before June 21, 2019.

Entered this 7th day of June, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge